161 A.2d 238 (1960)
HAMMOND & TAYLOR, INC., a corporation of the State of Delaware, Plaintiff,
v.
DUFFY TINGUE CO., a corporation of the State of Delaware, H. Eugene Savery, Executor of the Estate of Olin G. Tingue and Robert E. Hickman and Harry B. Tingle, trading as Emmett S. Hickman Co., a partnership, Defendants.
Court of Chancery of Delaware, New Castle.
May 11, 1960.
*239 Edmund D. Lyons and Arthur J. Sullivan, of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.
H. Eugene Savery, Wilmington, for defendants, Duffy Tingue Co. and H. Eugene Savery, Executor.
William Foulk and Robert W. Wakefield, Wilmington, for defendants, Robert E. Hickman and Harry B. Tingle, trading as Emmett S. Hickman Co.
SEITZ, Chancellor.
Plaintiff, Hammond & Taylor, Inc. ("plaintiff") brought this action to reform a certain written agreement and thereafter to obtain the return of a $2,500 deposit made in connection with the execution thereof. The agreement was with the defendant, Duffy Tingue Co. ("defendant") to purchase for $25,000 the defendant's retail heating oil distributing business and assets, including the good will. The defendant's agent Emmett S. Hickman Company, also a defendant ("Hickman"), brought about the sale and its agent drew the agreement of sale dated November 28, 1958, to which the plaintiff, the defendant, and Hickman were signatories. No lawyer was involved.
The agreement was never consummated because of a disagreement between plaintiff and defendant prior to the settlement date. It arose because plaintiff wanted monetary assurance in the form of a $5,000 escrow that defendant's president (Mr. Tingue) would be able to carry out his part of the deal.
The agreement contained the following provision:
"Seller [defendant] further agrees to cooperate with the Purchaser [plaintiff] in the take over of the business operation and handling of the accounts involved, even to the extent of entering the employ of the Purchaser on terms to be mutually agreed on."
Tingue, individually, was not a party to the agreement. Plaintiff therefore had the agreement reformed at trial to provide that the Seller would cause its president, Tingue, to enter into an agreement to cooperate in the manner quoted above.
All parties agree that what plaintiff was really buying was the defendant's good will, and that Tingue's active cooperation was vitally important to that end. They also agreed that the quoted provision as reformed was a most important provision of the agreement.
The quoted provision as reformed is almost the classic example of a legally unenforceable provision because it is nothing but an agreement to agree in the future without any reasonably objective controlling standards provided. Viewed as of the time it was executed, the agreement *240 was unenforceable because of the legal indefiniteness of one of its material provisions.
But defendant argues that plaintiff and Tingue orally agreed on the terms of an employment agreement and thus rendered that provision of the written agreement definite before the settlement date.
Did the evidence show that plaintiff and Tingue entered into a definite and enforceable employment agreement? The case is a "close" one on this point. I think there was a loose understanding which seemed to evolve from the conversations but if I were asked to define its terms with reasonable definiteness I could not do so. My difficulty would relate primarily to the term of employment and hours per day. Certainly these provisions are important to the transfer of good will. I gained the impression at the trial that the witnesses, when pressed as to the agreed terms, were in part stating what they would have considered reasonable rather than what was actually agreed to. I believe there was no bad faith on either side.
As stated, the evidence leaves me in doubt as to whether the complete terms of an oral employment agreement were agreed to and I resolve the doubt against defendant because its agent drew the agreement and because equity abhors a forfeiture.
I therefore conclude that there was no binding agreement between plaintiff and defendant with respect to all the material terms of purchase. It follows that plaintiff is entitled to the return of the $2,500 deposit. A joint and several judgment against the defendants in that amount will be granted.
I next consider Hickman's cross-claim against defendant. Defendant determined that plaintiff failed to complete the contract and it therefore exercised its option to declare the contract null and void and to retain the $2,500 deposit in accordance with the contract terms. At defendant's direction Hickman kept $1,500 as its commission and paid defendant the remaining $1,000. By this cross-claim Hickman seeks to be saved harmless by defendant for any judgment obtained by plaintiff and to have judgment that it is entitled to its commission as against defendant. Hickman relies upon the following provision of the Agreement of November 28, 1958:
"It is further agreed by the parties thereto that Emmett S. Hickman Co., Agent brought about this sale, and the Seller agrees to pay Emmett S. Hickman Co., the commission of Six (6) per cent of the sale price, and the payment of this commission shall not depend upon the consummation of the transfer."
It does not seem reasonable to infer that the quoted provision was intended to be applicable even though there was no binding agreement executed by the parties  as I have found. The quoted provision was clearly intended to protect Hickman if the parties to a binding agreement failed to consummate it. Consequently, I do not believe Hickman is entitled to retain the commission as against defendant. See Volker v. Fisk, 75 N.J.Eq. 497, 72 A. 1011. Moreover, to permit Hickman to retain the commission would be to permit an agent to profit from his own negligence, which here consisted of the drawing of a legally incomplete instrument because of an admitted failure "to think the matter through". See 12 C.J.S. Brokers § 73.
I conclude that Hickman is entitled to be held harmless by defendant but only to the extent of the $1,000 due in excess of the portion of the deposit retained by Hickman.
Present order on notice.